UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONALD S. LAIRD,

    Plaintiff,

v.                                                   Case No. 8:07-cv-266-T-TBM

MICHAEL J. ASTRUE,[1]
Commissioner of the United States
Social Security Administration,

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was thirty-nine years of age at the time of his initial administrative hearing on March 2, 2006. He stands 5', 8" tall and weighed 165 pounds. Plaintiff has a high school education with a couple of years of college. His past relevant work was as a supervisor for a wireless service company and convenience store manager or assistant manager. Plaintiff applied for disability benefits in April 2003, alleging disability as of January 5, 2003, by reason of limitations and pain from a back injury, depression, and anxiety. The Plaintiff's application was denied originally and on reconsideration.

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). Hearings were conducted on March 2, 2006, and March 16, 2006. The Plaintiff was represented at the hearing by counsel and testified in his own behalf. At the second hearing, a psychological expert and a vocational expert were called by the ALJ.

Plaintiff testified that he was currently working as the manager of a convenience store. However, Plaintiff indicated that he was missing five days of work a month and often left work early. Regarding his prior work history, earnings records suggested that Plaintiff had worked full time since 2002. According to Plaintiff, he tried to maintain employment, and, in fact, had some gainful employment from 2003 through 2005. These jobs were usually short-lived and he would quit or be let go because of difficulty performing the work. He testified that he would slip out and lie down for fifteen minutes or so every couple of hours.

Plaintiff described a list of impairments indicating that he previously had undergone a discectomy infusion at L4-5, suffered low back pain, had a mitral valve prolapse condition for years, suffered cardiovascular disease and had a heart catheter, had a history of depression that caused him to miss work often and caused memory problems, and (by his account) had two attempts at suicide. At the time of hearing, Plaintiff claimed to have lost sight in his right eye due to lesions on the eye. He also claimed to suffer irritable bowel syndrome. He has to urinate frequently and sometimes has diarrhea as well. He claimed to suffer occasional high blood pressure and high cholesterol. According to the witness, he was taking methadone for pain. His medications left him "spaced out all the time." According to Plaintiff when he is able to take medications for his depression, they help. He was taking Lasix for his high blood

2

pressure and it resulted in his need to urinate frequently.  He admitted a history of alcohol abuse but testified he had not had alcohol in two years.

Plaintiff was living with mother in South Carolina.  Prior to that, Plaintiff had been homeless at various times.  By Plaintiff's estimate, he can sit for about five minutes before he gets up due to back cramps and spasms.  During the drive from South Carolina to Florida for the hearing, Plaintiff rode in the rear bed.  They had to stop every forty-five minutes or so for a bathroom break.  By his description, he can stand for about fifteen minutes.  Plaintiff believed he could lift a couple of gallons of milk although he claimed it would hurt.  He testified further that there were days he would remain in bed all day, and on weekends, he generally stayed in bed except to go to the bathroom.  (R. 381-402).

At his follow-up hearing, the ALJ and Plaintiff again discussed his brief history and earning records from 2004 and 2005.  (R. 405-418).

Next, the ALJ took testimony from Michael D. Eastridge, Ph.D., a licensed psychologist.  By his testimony, which was based on his review of Plaintiff's file, Plaintiff's condition would not meet or equal a listed impairment and Plaintiff was capable of performing simple work.  On questioning from Plaintiff's counsel, the witness acknowledged that some things about Plaintiff's conditions had changed over the past few years and there was not a lot to indicate the severity of his bipolar disorder.  He acknowledged that at some point between an apparent stroke in 2000 and 2003, Plaintiff had suffered a significant memory problem that may have effected his ability to follow complex instructions or remember detaned information.  The witness further acknowledged that even if he had maintained work as a manager of a convenience store in 2004 or 2005, it would not

necessarily follow that he could have done such work two or three years earlier. (R. 408-410).

The ALJ also took testimony from Joyce Courtright, a vocational expert ("VE"). The witness testified upon the assumption of a younger individual with Plaintiff's education, a history of alcohol and substance abuse, chest pains and low back pain, status post-discectomy of L4 and 5 with fusion and sinus surgery, as well as post-catherization, with cardiac procedures with suspected cardiovascular accident or mitral valve prolapse. Initially, the VE was asked to assume such person was capable of lifting twenty pounds occasionally, ten pounds repeatedly, with the need for a sit/stand option and an assumption that such person would be limited to simple work. On these assumptions, such person could not perform Plaintiff's past relevant work but could perform jobs such as an assembler of small parts, cashier II, and machine tending such as injection molding machine tending. On a further assumption that such individual could not perform even simple work, no such work would be available. On questioning by Plaintiff's counsel, the VE testified that the jobs would require frequent near vision. If the individual's sight was limited to one eye, visibility to work would depend on the near vision level in that eye and the person's depth perception. According to the VE, the issue would more likely be depth perception and it could affect the individual's ability to work at machine tending. Problems with depth perception could reduce, by 20 to 25%, the available assembly jobs as well. With a limited field of vision, the available cashier jobs could be reduced by 15%. In the witness's opinion, some of the cashier jobs would permit the individual to move about a bit, in addition to the sit/stand option. On a further assumption that the individual would have to use a restroom more frequently than every two hours and perhaps take one or two unscheduled breaks, the witness testified that such jobs would accommodate such occasional breaks but not on a regular basis. Generally, such type

4

employment would tolerate ten to twelve days off a year.  The witness further testified that if such individual had back pain and had to go off and lie down for fifteen to twenty minutes at a time, if such breaks amounted to four hours a week away from the job, such conduct would not be tolerated over the long haul.  (R. 410-15).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of September 9, 2006, the ALJ determined that while Plaintiff has severe impairments related to congestive heart failure (undocumented by record evidence), degenerative disc disease, and manic depression, he nonetheless had the residual functional capacity to perform simple, light exertional work with a sit/stand option.  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy.[2]  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 12-23).  The Appeals Council denied Plaintiff's request for review.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological,

---

[2]The decision also reflects the conclusion of the ALJ that Plaintiff had engaged in substantial gainful activity in 2005 with earnings of more than $25,000.  (R. 14).

5

or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

### III.

On this appeal, Plaintiff contends that "the Commissioner erred in failing to consider all of the Plaintiff's impairing conditions or the effects thereof." (Doc. 23 at 6). More particularly, Plaintiff complains that despite medical and vocational evidence concerning a visual impairment, the ALJ made no finding concerning the significance of the condition and did not give any reasons for discounting the condition.[3] Thus, Plaintiff urges that the ALJ failed in his duty to fully develop the record in this regard, and at a minimum, he should have ordered a consultative examination to permit an informed decision. Additionally, Plaintiff urges that the ALJ failed to address his need for a sit/stand/walk option, the side effects of his diuretic medicine, his need for frequent bathroom breaks, and the number of sick days and unscheduled breaks that would be permitted given his circumstances. Plaintiff also urges that the ALJ was obliged to address the impairments individually and in combination when

---

[3]The medical record regarding Plaintiff's vision problem is a somewhat confusing collection of complaints and findings. While Plaintiff occasionally claimed the problem, at other times he did not. It is difficult to discern whether the problem was constant or only occasional, or how severe it was. *See e.g.* (R. 228, 234, 241, 244, 257, 258, 262, 315, 322, 325-26, 328, 352-57, 369). Indeed, at the initial hearing, Plaintiff made it sound like the condition was a relatively new one when he testified he had lost sight in his right eye and was due to see an opthomologist the following Monday. (R. 391). What is clear from the record is that Plaintiff had been able to work for many years despite any limitations his impaired vision caused.

7

evaluating disability and he failed to do so. By Plaintiff's argument, the case should be reversed and remanded for further consideration in light of applicable standards.

In response, the Commissioner initially urges that, given Plaintiff's earnings from work in excess of $25,000 in 2005, whatever visual problems he may have had did not prevent him from engaging in substantial gainful activity and his argument in this regard is without merit. Furthermore, the Commissioner notes that Plaintiff's same counsel questioned the VE concerning whether a one-eyed individual could perform the jobs the witness had previously identified. By the testimony of the VE, while the hypothetical individual could not perform the machine tending jobs, the individual was otherwise capable of performing the substantial majority of the assembly jobs and cashier jobs previously identified. Thus, while Plaintiff's visual problems might reduce the number of jobs, there were still a substantial number of jobs available that Plaintiff could perform even if his visual impairment was fully credited. The Commissioner also argues that the ALJ was not required to order a consultative examination in this instance. The Commissioner notes that neither Plaintiff nor his counsel requested one and the existing medical evidence was sufficient to support an informed decision. In sum, in light of the medical record, the ALJ was not required to fully credit Plaintiff's subjective complaints and testimony.

An ALJ undoubtedly has a basic duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). This obligation exists whether or not the claimant is represented by counsel. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Further, an ALJ must consider every impairment alleged. *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir.1986). Nonetheless, it is the claimant's burden of proving that he is disabled and he is responsible for

8

producing evidence in support of his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a), (c)). Further, the obligation of an ALJ to order a consultative examination arises only when "such an evaluation is necessary for him to make an informed decision." *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984)); *see also Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). Case law in this circuit requires the Plaintiff to show some prejudice before a remand to the Commissioner for further development is ordered. *See Graham*, 129 F.3d at 1423. In considering whether a remand is required, the court should be guided by whether there are evidentiary gaps in the record that result in unfairness or clear prejudice. *Id*.

After full consideration of the decision in light of the medical record, I agree with the Commissioner's position that there is no error warranting a remand concerning Plaintiff's vision problem or his other subjective complaints. Initially, I agree with the Plaintiff that all would have been better served had the ALJ addressed Plaintiff's vision problem more directly at step two of the evaluation process. However, Plaintiff did not claim to be disabled by reason of his vision problem, nor did his attorney ever suggest it or otherwise suggest the need for a consultative evaluation or other further work-up while before the ALJ.[4] However, if there is error here, it is not at step two of the evaluation process. As the decision reflects, the ALJ credited Plaintiff with severe impairments at step two of the evaluation process (R. 14) and there is no error warranting a remand at that step solely for the failure of the ALJ to mention the claim of vision loss. *See e.g. Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir.

---

[4]In this circuit, the general rule is that an argument not raised in an administrative hearing cannot be raised on appeal. *See Alacare Home Health Servs., Inc. v. Sullivan,* 891 F.2d 850 (11th Cir. 1990).

9

1987) (noting that, ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two."). Furthermore, as Plaintiff himself suggests, the ALJ recognized his claim for vision loss when he addressed the same in the context of the VE's testimony that a vision loss in one eye that implicated the person's depth perception or field of vision would eliminate machine tending jobs otherwise available to the Plaintiff but only slightly reduce the availability to Plaintiff of the assembly and cashiering jobs. (R. 22, 411-12). As the decision reflects, in the end the ALJ adopted the VE's testimony as conclusive on the matter of disability. (R. 23). Thus, any suggestion that the ALJ wholly ignored or failed to consider his claim of vision loss is contradicted by the decision itself.[5]

Ultimately, it appears to me that even if the ALJ erred in not expressly indicating the degree of limitation he found in such condition, if any, such may be fairly inferred from the decision and a remand would not be warranted in this case. Here, even if Plaintiff was wholly blind in one eye resulting in depth perception or field of vision problems as a consequence, the record supports that he was not disabled from all work and a remand would serve no useful purpose. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); Fed. R. Civ. P. 61. By my reading of the hearing transcript and the medical record, the ALJ invited Plaintiff to provide all his medical evidence of a vision loss (R. 391-92). There is no claim here that Plaintiff wasn't given a fair opportunity to present such record. Those records submitted by the Plaintiff, when

---

[5]The ALJ also acknowledged that a state agency doctor noted, among other findings, that Plaintiff had keratocornus and needed a corneal transplant. (R. 19, 268).

10

considered for their vocational significance, suggested the condition was not disabling alone or in combination with Plaintiff's other impairments.⁶ As noted by the Commissioner at the follow-up hearing, the VE was expressly questioned about the limiting effects of such condition by Plaintiff's counsel. As set forth above, according to the VE, even if the claimant was visually impaired in one eye, only the machine tending jobs identified by the witness would not be available to him. The vast majority of assembly and cashiering jobs so identified would be despite any accompanying loss of depth perception or field of vision. Thus, even assuming the ALJ erred in not concluding the vision loss was a severe impairment, such was assumed by counsel with the VE, and by the VE's testimony, the functional import of the impairment did not render Plaintiff incapable of all jobs even when assumed with other limitations. In these circumstances, I conclude that the disability decision could be reached without evidence from a consultative examine. There was no gap in the record or inconsistency which required the same and a remand for such further work-up would serve no useful purpose.

Plaintiff claimed also that he needed a sit/stand/walk option and that he was taking the diuretic Lasix and therefore needed frequent, unscheduled breaks to urinate after taking it in the morning and at night. He also testified that in his current job, he was out about five

---

⁶The records actually undermined Plaintiff's credibility on the matter. For example, the notes from Dr. John M. Motto, a pain management specialist that Plaintiff was seeing in January through June 2006, routinely documented only "atraumatic, corneal clouding in right eye." (R. 363-76). However, in a note from March 2006, the symptom appears correctable. Thus, it in addition, "[Plaintiff] has seen opthomologist, has viral infection in right cornea. Has stimulated neovascluation, plan is to laser and perform cornea transplant when infection has cleared up. . ." (R. 369). Thereafter, in May 2006, Plaintiff reported to this same doctor he was working 12-15 hour days. (R. 373). In June 2006, he reported starting a new job "at US Cellular as Operations Manager /sells SunCom service (district managers report to him, he reports to CEO) . . . 40 hour week/not on feet all day/not lifting g boxes." (R. 375).

11

days a month and he would often slip out early from work.  As testified to by the VE, more than ten to twelve days off a year for illness would not be tolerated; nor would unscheduled breaks totaling two to four hours a week.  The ALJ credited Plaintiff with the ability to sit, stand and walk up to six hours in an eight hour workday if he had a sit/stand option.  (R. 19).  Such a limitation was also assumed by the VE who also indicated some cashier job would even allow a person to walk about a bit.  (R. 410, 411-12).  As for the testimony concerning the use of Lasix, while the record supports that in 2002 and 2003, Plaintiff was prescribed Lasix, *see e.g.* (R. 242, 313-14), it also shows that Dr. Huy M. Vu directed him to stop the medication in June 2004 based on normal findings.  (R. 321).  Thereafter, I can find no evidence to support that Plaintiff was taking the medicine as he testified. *See* (R. 319-76).  More significantly, even when he was on the medicine, the records do not support his complaints that it caused frequent urination such that a normal workday would be wholly disrupted.  While the ALJ must fully consider side effects of medication, he is not obliged to consider complaints where there is no medical support for such. *See Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990).  Once again, while I agree that all would have been better served by more direct discussion of this subjective claim, a fair reading of the decision reflects that it was considered by the ALJ in the light of the VE's testimony (R. 23), and when that discussion and decision is considered in full, it is apparent that the ALJ discounted this testimony as less than fully credible.  In light of the medical record and given that these matters were considered and addressed, I conclude a remand would serve no useful purpose.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 8th day of February 2008.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record